**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00413-CR**
_____

**PAUL ANDREW THORNHILL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 258th District Court**
**San Jacinto County, Texas**
**Trial Cause No. 12,437**
_____

**MEMORANDUM OPINION**

A jury convicted appellant Paul Andrew Thornhill of possession of a controlled substance with intent to deliver, and the trial court assessed punishment at fifteen years of confinement. On appeal, Thornhill challenges the legal sufficiency of the evidence to support his conviction and the denial of his motion for mistrial. We affirm the trial court's judgment.

BACKGROUND

A grand jury charged Thornhill with possession of a controlled substance, namely methamphetamine, with intent to deliver, a first-degree felony. *See* Tex. Health & Safety Code Ann. § 481.112(a), (d). The indictment included a second count charging Thornhill with possession of a prohibited weapon, as well as an enhancement paragraph alleging one prior felony conviction for possession of a controlled substance, subjecting Thornhill to a minimum punishment of fifteen years of confinement. *See* Tex. Penal Code Ann. § 12.42(c)(1). The trial court conducted a jury trial, and prior to trial, the trial court approved Thornhill's motion in limine, limiting the evidence to only include the methamphetamines that Thornhill was charged with and excluding extraneous offense evidence.

William Wheeler testified that on March 27, 2018, he was driving a white Ford truck, and when he got out at his friend's house, an unknown person took off in his truck. Savannah Echhade, Wheeler's sister, testified that Wheeler asked her to help locate the stolen truck. Echhade explained that when she found the truck, she called the police and followed the woman who was driving the truck, which was later recovered.

Detective David Hernandez of the San Jacinto County Sheriff's Office testified that he mainly investigates narcotics offenses. Hernandez testified that on March 27, 2018, he was working as a patrol deputy when he received a call regarding

a stolen vehicle, and when he located the vehicle parked at a house, there was no one in the vehicle. Hernandez testified that while conducting an immediate search of the area, he encountered Thornhill, who was exiting the house and had a very large knife on his side. Based on the circumstances, Hernandez explained that he took a felony approach to the situation and drew his pistol for his safety. After Hernandez detained and questioned Thornhill, he learned that Whitney Holloway was the driver of the stolen truck, and Thornhill gave Hernandez consent to search the house for Holloway.

Hernandez testified that upon entering the house, he observed a crystal-like substance on two spoons and some scales sitting on a coffee table, and Hernandez explained that the items were consistent with the packaging and selling of narcotics which led him to suspect the presence of methamphetamine. According to Hernandez, after he cleared the house, he asked Thornhill about the illegal substance on the scales, and Thornhill stated that "he didn't know what I was talking about." Hernandez testified that based on the items he observed on the coffee table, he asked Thornhill for consent to search the entire residence for narcotics, but Thornhill denied consent because he claimed it was not his house. According to Hernandez, Thornhill told him that the house belonged to his deceased brother. Hernandez explained that he believed he had probable cause, so he secured the residence and obtained a search warrant.

Hernandez testified that during his search of the house, he found a small container with multiple baggies consistent with packaging and selling narcotics and a "fairly large quantity[]" of methamphetamine. Hernandez explained that he found fifteen grams of methamphetamine in the bedroom and a smaller amount wrapped in cellophane. According to Hernandez, fifteen grams of methamphetamine is not a personal usage amount, and the smaller amount wrapped in cellophane is the amount typically sold on the street to users. Hernandez testified that he placed Thornhill under arrest and found over eight hundred dollars in cash on his person.

Deputy Bryan Pfluger of the San Jacinto County Sheriff's Office testified that on March 27, 2018, he received a call requesting assistance at the house Hernandez was investigating after following the stolen truck, and Pfluger found Holloway hiding under the carport and detained her for the unauthorized use of a motor vehicle. Pfluger testified that he did not enter the house until after the search warrant was presented. An undercover officer with the San Jacinto County Sheriff's Office testified that on March 27, 2018, he assisted Hernandez in drafting the search warrant and searching the house. The undercover officer explained that he found methamphetamine in the bedroom. According to the undercover officer, he had previously encountered Thornhill at the house in October 2017. Patrick Tynan, a forensic analyst with the Houston Forensic Science Center, testified that he

4

performed testing on the four baggies containing evidence recovered from the house, and the tests indicated the presence of methamphetamine in all four items.

At the close of the State's evidence, defense counsel moved for a directed verdict, arguing that the State failed to prove a causal connection. The trial court denied defense counsel's motion for directed verdict. The jury found Thornhill guilty of possession of a controlled substance with intent to deliver methamphetamine. The trial court conducted a sentencing hearing, during which Thornhill pleaded "true" to the enhancement paragraph. After Thornhill entered a plea agreement regarding Count Two in the indictment, the trial court assessed Thornhill's punishment at fifteen years of confinement on Count One and Count Two and ordered the sentences to run concurrently.

## ANALYSIS

In issue one, Thornhill contends the evidence is insufficient to support his conviction for possession of a controlled substance with intent to deliver because there were not sufficient links between him and the methamphetamine found by the police. According to Thornhill, the State failed to show that he possessed the methamphetamine found in the bedroom of the house because he did not own the house. Thornhill argues that his mere presence at the house is insufficient to establish that he knowingly possessed the methamphetamine. The State contends that there are multiple affirmative links connecting Thornhill with the methamphetamine.

5

In evaluating the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury is the ultimate authority on the credibility of the witnesses and the weight to be given to their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). An appellate court may not sit as a thirteenth juror and substitute its judgment for that of the factfinder by reevaluating the weight and the credibility of the evidence. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899. A reviewing court must give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *See Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all evidence when viewed in the light most favorable to the

6

verdict." *Hooper*, 214 S.W.3d at 16-17. We treat direct and circumstantial evidence equally. *Clayton*, 235 S.W.3d at 778.

A person commits an offense if the person knowingly possesses methamphetamine with intent to deliver. Tex. Health & Safety Code Ann. §§ 481.102(6),[1] 481.112(a), (d). "'Possession' means actual care, custody, control, or management." *Id.* § 481.002(38).[2] "To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *abrogated on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 n.32 (Tex. Crim. App. 2015).

> Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous. This is the so-called "affirmative links" rule which protects the innocent bystander–a relative, friend, or even stranger to the actual possessor–from conviction merely because of his fortuitous proximity to someone else's drugs. Mere presence at the location where drugs are found is thus, insufficient, by itself, to establish actual care, custody, or control of those drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., "links"), may well be sufficient to establish that element beyond a reasonable doubt.

---

[1]We cite to the current version of section 481.102 of the Texas Health and Safety Code because the 2021 amendment does not affect the outcome of this appeal.
[2]We cite to the current version of section 481.002 of the Texas Health and Safety Code because the 2021 amendment does not affect the outcome of this appeal.

*Evans v. State*, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006) (footnotes omitted). Because the "'affirmative links' rule is not an independent test of legal sufficiency[,]" the Court of Criminal Appeals uses the term "'link' so that it is clear that evidence of drug possession is judged by the same standard as all other evidence." *Id.* at 161 n.9.

> Reviewing courts have developed several factors showing a possible link between the accused and contraband, including: (1) the accused's presence when the search was conducted, (2) whether the contraband was in plain view, (3) the accused's proximity to and the accessibility of the contraband, (4) whether the accused was under the influence of narcotics when arrested, (5) whether the accused possessed other contraband or narcotics when arrested, (6) whether the accused made incriminating statements when arrested, (7) whether the accused attempted to flee, (8) whether the accused made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether the accused owned or had the right to possess the place where the contraband was found, (12) whether the contraband was found in an enclosed place, (13) whether the accused was found with a large amount of cash, and (14) whether the conduct of the accused indicated a consciousness of guilt.

*Roberts v. State*, 321 S.W.3d 545, 549 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Thornhill contends the evidence is insufficient to show that he possessed the methamphetamine found inside the bedroom of the house where he was arrested because (1) the house belonged to his deceased brother, (2) the house was unable to be locked because the doors were off the hinges, (3) he was arrested in the front yard, (4) he had no illegal substances on his person, (5) there was no indication that he

8

lived at the house, (6) paraphernalia found in plain view was not fingerprinted, (7) there was no evidence he visited the bedroom where the methamphetamine was found, and (8) there was no evidence regarding Holloway's connection to the house or that he was connected to Holloway. The record shows that Thornhill was not in exclusive possession of the bedroom where the controlled substance was found. Thus, additional facts and circumstances must link Thornhill to the contraband in such a way that the jury could conclude that he had knowledge of the contraband and exercised control over it. *See Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Although the contraband was not in Thornhill's exclusive possession, the jury could infer that Thornhill intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances justifying such an inference. *See Tate v. State*, 500 S.W.3d 410, 413-14 (Tex. Crim. App. 2016); *see also* Tex. Penal Code Ann. § 6.03(a), (b). The State is not required to present evidence on each factor to show a link between Thornhill and the methamphetamine, and the absence of a factor is not evidence of innocence that must be weighed against the factors that are present. *See Espino-Cruz v. State*, 586 S.W.3d 538, 544 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd).

The jury could have rationally concluded beyond a reasonable doubt that Thornhill possessed the methamphetamine found in the bedroom since he was exiting the house when Hernandez first arrived at the scene; he gave Hernandez

9

consent to search the house, instead of saying that he could not grant consent since it was not his house, but belonged to his deceased brother; his presence at the house when the search was conducted; his sole presence in the house where contraband, including two spoons and some scales covered in a crystal-like substance was found in plain view on a coffee table; his proximity to and the accessibility of the contraband; the fact that contraband, which included multiple baggies consistent with packaging and selling narcotics and a fairly large quantity of methamphetamine, was present and found in a small container; and his possession of over eight hundred dollars in cash on his person. *See Roberts*, 321 S.W.3d at 549. Additionally, the jury heard testimony that the total weight of the methamphetamine seized during the search of the house was an amount indicative of possession with intent to deliver.

In summary, the logical force of all the circumstantial evidence in this case, combined with reasonable inferences, is sufficient to show that Thornhill had actual care, custody, control, and management of the methamphetamine found in the bedroom. *See Evans*, 202 S.W.3d at 166. Viewing all the evidence in the light most favorable to the State, the jury could reasonably conclude, beyond a reasonable doubt, that Thornhill committed the offense of possession of methamphetamine with intent to deliver. *See Jackson*, 443 U.S. at 319; *see also Hooper*, 214 S.W.3d at 13. We overrule issue one.

In issue two, Thornhill argues that the trial court abused its discretion by denying his motion for mistrial after the State allegedly violated the trial court's limine order which prohibited evidence of his extraneous offenses. We review a trial court's denial of a motion for mistrial for an abuse of discretion, and we will reverse only in extreme circumstances in which the prejudice was incurable. *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004); *see also Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (concluding that mistrial is appropriate only in extreme circumstances "for a narrow class of highly prejudicial and incurable errors[]"). We must uphold a trial court's ruling on a motion for mistrial if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010).

Thornhill complains about two instances in which he alleges that the State violated his motion in limine. Based on our review of the first instance, we conclude that Thornhill failed to preserve any error. To preserve an issue for appellate review, the defendant must make a timely request, objection, or motion stating specific grounds for the ruling he desires the trial judge to make and obtain a ruling on the objection. Tex. R. App. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). The objection must be made at the earliest opportunity, and "[a] motion for mistrial is timely only if it is made as soon as the grounds for it become apparent." *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). To preserve error for

11

appellate review, a defendant's complaint on appeal must also comport with the objection raised at trial. *See Santellan v. State*, 939 S.W.2d 155, 171 (Tex. Crim. App. 1997).

The record shows that defense counsel approached the bench after Hernandez entered the courtroom with a "handful of evidence" that defense counsel described as "pills and a bunch of the other stuff that is being kept out of the extraneous offenses." While defense counsel expressed concern that the jury may have seen the extraneous offense evidence, defense counsel never made an objection or moved for a mistrial based on Hernandez's actions. Since Thornhill failed to move for a mistrial, he has not preserved his argument for our review. *See* Tex. R. App. P. 33.1; *Griggs*, 213 S.W.3d at 927.

The second instance about which Thornhill complains occurred during Hernandez's testimony. When defense counsel asked Hernandez if he did anything to confirm that Thornhill's brother owned the house and had passed away, Hernandez testified that "I did the other – other things to confirm that there had been other offenses at that location." The trial court sustained defense counsel's objection to Hernandez's response as being non-responsive. The trial court advised the parties that Hernandez had violated the defense's motion in limine and instructed the State to make sure its witnesses did not testify about any of Thornhill's extraneous offenses. Defense counsel asked the trial court to instruct the jury to disregard

Hernandez's non-responsive answer and moved for a mistrial. The trial court instructed the jury to disregard Hernandez's answer and denied the motion for mistrial.

Generally, a prompt instruction to disregard will cure a witness's inadvertent reference to an extraneous offense. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). An instruction to disregard can cure any improper impression unless the evidence is so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the mind of the jury. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992). "On appeal, we generally presume the jury follows the trial court's instruction in the manner presented." *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). The presumption is rebuttable, but the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instruction. *Id.*; *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

Thornhill has not pointed to any evidence showing that the jury failed to follow the trial court's instruction. Nor was Hernandez's reference that he did other things to confirm that there had been other offenses at the house so calculated to inflame the minds of a jury or of such a nature as to suggest the impossibility of withdrawing the impression produced. *See Kemp*, 846 S.W.2d at 308. Under the circumstances here, the trial court could have reasonably concluded that its

instruction to disregard was sufficient to cure any error caused by Hernandez's non-responsive answer. *See Ovalle*, 13 S.W.3d at 783; *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); *Tennard v. State*, 802 S.W.2d 678, 685 (Tex. Crim. App. 1990) (holding that prompt limiting instruction given after a witness referred to the defendant's prior prison time cured any error); *Barney v. State*, 698 S.W.2d 114, 125 (Tex. Crim. App. 1985) (holding that instruction to disregard to a reference to a defendant's status as "ex-con" cured any error). Therefore, we conclude that the trial court's denial of the motion for mistrial was within the zone of reasonable disagreement. *See Coble*, 330 S.W.3d at 292; *Ocon*, 284 S.W.3d at 884; *Griggs*, 213 S.W.3d at 927. We overrule issue two. Having overruled each of Thornhill's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on June 4, 2021
Opinion Delivered July 28, 2021
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.

14